**LAW OFFICE OF ROBERT A. TANDY, LLC**
Robert A. Tandy, Esq.
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake, New Jersey 07677
(201) 474-7103
(201) 474-7101 (facsimile)
rtandy@tandylaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IRIS CHIN<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF MEDICINE & DENTISTRY OF NEW JERSEY; RUTGERS NEW JERSEY MEDICAL SCHOOL; JAMES M. HILL, Ph. D., individually and in his official capacity; ABC CORPORATION (1-10); JOHN DOES (1-10); and JANE DOES (1-10)<br><br>Defendants. | CIVIL ACTION No:<br><br>**COMPLAINT AND JURY DEMAND** |

## PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff against Defendants, University of Medicine & Dentistry of New Jersey; Rutgers New Jersey Medical School; James M. Hill, individually and in his official capacity; ABC Corporation, Inc. (1-10), John Does (1-10) and Jane Does (1-10) ("Defendants") to remedy violations of the Americans with Disabilities Act of 1990; the Americans with Disabilities Act Amendments Act of 2008; the Rehabilitation Act of 1973; and the New Jersey Law Against Discrimination.

2. Plaintiff seeks *inter alia*, compensatory damages to make her whole for the losses she has sustained from Defendants' discrimination based on her disability.

**PARTIES**

3. Plaintiff, Iris Chin ("Plaintiff") was/is a medical student who was dismissed from Defendants, University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School. Plaintiff's documented atypical bipolar type II disorder; depression and anxiety with symptoms of tangential thinking and loss of mental executive power substantially limit her ability to learn. Plaintiff demonstrated the qualifications needed to satisfy the standards for admission and continued education at Defendants University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School.

4. Upon information and belief, Defendants, University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School, is a postgraduate school that qualifies as a place of public accommodation under federal and State of New Jersey law. Defendants, University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School, are located within this judicial district.

5. Upon information and belief, Defendant, James M. Hill, is the Dean of Student Affairs at Defendants, University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School.

6. Defendants ABC Corporation, Inc. (1-10), John Does (1-10) and Jane Does (1-10) are fictitious parties unknown to Plaintiff at this time but who may be identified during discovery in this matter. Upon information and belief, Defendants ABC Corporation, Inc. (1-10), John Does (1-10) and Jane Does (1-10) Defendants ABC Corporation, Inc. (1-10), John Does (1-10)

and Jane Does (1-10) were acting under color of State law, served in a supervisory capacity and had policy/decision making authority.

## JURISDICTION

7. Jurisdiction is properly laid in this Court pursuant to 28 U.S.C Sections 1331. No statute requires the Plaintiff to exhaust administrative remedies before bringing this action. Plaintiff invokes the pendent jurisdiction of this Court to consider claims arising under State law.

8. The amount in controversy exceeds the sum or value of $75,000.000, exclusive of interest and costs.

9. Venue is proper pursuant to 28 U.S.C. Section 1391(b).

## FIRST COUNT

**(Americans With Disabilities Act/ ADAAA and Rehabilitation Act)**

10. In or around 2004, Plaintiff was accepted to the Defendant UMDNJ MD program.

11. Upon information and belief, Plaintiff was the first accepted student of the year.

12. In or around the 2004-2005 school term, Plaintiff began suffering from severe depression with suicidal thoughts.

13. Plaintiff failed the first year of Defendants course requirements.

14. In or around 2005-2006, Plaintiff was allowed to repeat her first year course requirements at Defendants' medical school.

15. Although Plaintiff continued to suffer from severe depression and anxiety while treating with Defendant UMDNJ health professionals to no avail, Plaintiff successfully completed her first year requirements.

16. In or around 2006-2007, although Plaintiff continued to suffer from severe depression and anxiety while treating with Defendant UMDNJ health professionals to no avail,

Plaintiff successfully completed her second year course requirements at Defendants' medical school.

17. While preparing for the United States Medical Licensing Examination ("USMLE") Step 1 test, Plaintiff's mental health condition deteriorated and/or worsened to the point where Plaintiff lost the ability to concentrate and learn.

18. Prior to August 2007, Plaintiff met with several UMDNJ mental health professionals who, failing to diagnose her with any mental health disability, advised her that she was not a "good fit" for a medical career.

19. Between August 2007 and August 2008, Plaintiff took a medical leave of absence from the Defendant UMDNJ MD program.

20. In or around June 2008, Dr. Qi Hu diagnosed Plaintiff as suffering from "atypical bipolar type II" with symptoms of tangential thinking and loss of mental executive power. Dr. Hu prescribed Plaintiff medication for her medical condition.

21. In or around August 2008, Plaintiff met with Defendant Dr. Hill, who contradicted Dr. Hu's diagnosis and treatment plan and advised that Plaintiff's problem was that she had a lack of learning habits and study discipline combined with Attention Deficit Disorder.

22. At or around that time, Defendant Dr. Hill advised Plaintiff that she should not take the medication prescribed by Dr. Hu. Rather, Defendant Dr. Hill advised Plaintiff she should work out 300 problems every day.

23. In or around November 2008, at the recommendation of Defendant Dr. Hill, Plaintiff enrolled in a preparation class for the USMLE in Illinois.

24. In or around February 2009, Plaintiff took the USMLE 1 and failed.

25. After failing the USMLE, Plaintiff's mental condition worsened and fell into a deeper depression suffering feelings of hopelessness and desperation.

26. In or around May 2009, Plaintiff returned to Dr. Qi Hu for treatment.

27. In or around June 2009, Plaintiff sent a letter of appeal for reexamination and requesting a reasonable accommodation for her handicap/disability by delaying the second trial on the USMLE.

28. Plaintiff's request for reexamination and an extension delaying the second trial on the USMLE was granted.

29. In or around August 2009, Plaintiff took the USMLE 1 test and failed by one (1) point.

30. In or around October 2009, Plaintiff sent a letter of appeal for reexamination and requesting a reasonable accommodation for her handicap/disability by delaying the third trial on the USMLE.

31. Plaintiff's request for reexamination and an extension delaying the third trial on the USMLE was granted.

32. In or around January 2010, Plaintiff took the USMLE 1 test and passed.

33. Between January 2010 and March 2012, Plaintiff completed her third and fourth year clinic, rotations and clerkship.

34. Plaintiff received "High Pass" grades in surgery, management of chronic pain, substance abuse, and a sub-internship in psychiatry.

35. Plaintiff received honors in her ambulatory psychiatry and consultation liaison rotations.

36. Plaintiff received outstanding evaluations in many of her rotations.

37. Due to side-effects from medication Plaintiff was taking for her mental illness, Plaintiff's medication dosage was reduced to allow Plaintiff to study and prepare for the USMLE 2 Clinical Knowledge test.

38. As a direct result of reducing the dosage of medication, Plaintiff experienced symptoms of her mental illness including increased levels of anxiousness, anxiety and panic attacks.

39. In or around October 2011, Plaintiff took the USMLE 2 Clinical Knowledge test and failed.

40. In or around November 2011, Defendant Dr. Hill drafted a Medical Student Performance Evaluation and recommended Plaintiff for interviews for internships.

41. In or around December 2011, Plaintiff took the USMLE 2 Clinical Skill test and narrowly failed.

42. In or around March 2012, Plaintiff was awarded the title of Advanced Cardiovascular Life Support "ACLS" Provider by the American Heart Association.

43. In or around March 2012, Plaintiff requested reexamination and an accommodation for an extension delay postponing the second trial on the USMLE 2 for one (1) month as a result of a flare up of her mental illness.

44. In or around March 2012, Defendants rejected Plaintiff's request for a reasonable accommodation in postponing the second trial on the USMLE 2 Clinical Skill test.

45. Defendants denied Plaintiff's request for a reasonable accommodation.

46. In or around March 2012, Plaintiff failed the USMLE 2 Clinical Skill test by a narrow margin.

47. In or around May 2012, Plaintiff was dismissed from the Defendant UMDNJ medical program.

48. In or around May 2012, Defendant Dr. Hill advised Plaintiff that she demonstrated "unprofessional behavior" and she was not fit to be a doctor.

49. Defendant Dr. Hill further advised Plaintiff to the effect "You failed because you did not study hard," and added "It doesn't matter if you have bipolar or not. You could not be a doctor because you could not perform as a doctor due to your bipolar disorder."

50. In or around May 2012, Plaintiff appealed her dismissal from the medical program and requested an accommodation to sit for a reexamination of the USMLE 2 Clinical Skill test.

51. Dr. Qi Hu submitted a letter certifying Plaintiff's medical condition and deficiencies leading up to the second trial of the USMLE 2 Clinical Skill test.

52. On or about June 26, 2012, Defendant Dr. Hill presented a letter dated June 20, 2012 to Plaintiff whereby advising Plaintiff that effective immediately, Plaintiff was dismissed from Defendant New Jersey Medical School.

53. At all times herein mentioned, Plaintiff was a "qualified individual with a disability" within the meaning of the law.

54. Plaintiff has been, and continues to be, treated for her medical condition.

55. At all times herein mentioned, Plaintiff's disability substantially limited and/or limits one or more of her major life activities within the meaning of the law.

56. Under the ADA, Defendants are required to make reasonable accommodations and modifications of policies, practices or procedures as to programs and related offerings so as to provide the disabled with full and equal enjoyment of goods, services, facilities, privileges,

advantages or accommodations in the most integrated setting that is appropriate to the disabled individual's needs; and is otherwise prohibited from using standards, criteria and/or administrative methods that discriminate against the disabled.

57. Under the Rehabilitation Act, Under the Rehabilitation Act, Princeton must not prevent an "otherwise qualified individual with a disability . . . , solely by reason of her or his disability, (to) be excluded from the participation in, be denied the benefits of, or be subjected to discrimination[.]"

58. Defendants University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School are subject to the ADA and the Rehabilitation Act.

59. Defendants University of Medicine & Dentistry of New Jersey and Rutgers New Jersey Medical School are places of "public accommodation" affecting "commerce" within the meaning of the law.

60. Effective January 1, 2009, the ADA defines "disability" to mean a "physical or mental impairment that substantially limits one or more major life activities of such individual" including the "major life activities" of "learning, reading, concentrating, thinking and communicating."

61. Both the ADA and the Rehabilitation Act protect disabled Americans from discrimination on the basis of their disabilities.

62. Defendants' violation of the ADA has had the effect of denying Plaintiff the full and equal enjoyment of Defendants' goods, services, privileges, advantages, or accommodations of any place of public accommodation.

63. Defendants' violation of the Rehabilitation Act has had the effect of excluding Plaintiff from participation in Defendants' education and she has been denied the benefits of Defendants' services.

64. Defendants refused to make reasonable modification of its policies, practices, and procedures, despite the fact that these modifications are necessary to afford its goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities, such as Plaintiff.

65. Defendants cannot demonstrate that making reasonable modifications would have fundamentally altered the nature of such goods, services, facilities, privileges, advantages, or accommodations.

66. Defendants' failure to make non-fundamental, reasonable modifications of its policies, practices and procedures, where such modification is necessary to accommodate disabled persons, violates Plaintiff's rights under the ADA.

67. It is a violation of the ADA and the Rehabilitation Act to fail "to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

68. Defendants cannot demonstrate that taking such steps would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations, or that taking such steps would result in an undue burden.

69. As a direct and proximate result of Defendants' illegal and wrongful actions, described above herein, Plaintiff has suffered and continues to suffer economic, non-economic, and emotional distress damages, physical manifestations of pain and suffering, anxiety, ridicule, embarrassment, public humiliation, loss of compensation, loss of earnings, loss of standing in the community, legal expenses, and other irreparable harm and expenses as a result of Defendants' actions.

**WHEREFORE**, Plaintiff, Iris Chin, prays for judgment against Defendants, jointly and severally, as follows:

A. For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B. For compensatory damages;

C. For punitive damages;

D. For attorneys' fees and costs of this action;

E. For interest at the maximum legal rate on all sums awarded;

F. For Consequential damages;

G. Readmission to the Medical Program; and

H. For such other and further relief as the Court deems just and proper.

**SECOND COUNT**

**(NJLAD)**

70. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 69 of the Complaint as if set forth at length herein.

71. Defendants failed to offer and/or allow a reasonable accommodation for Plaintiff's medical condition.

72. Defendants failed to engage in an interactive dialogue with Plaintiff relating to her handicap.

73. Defendants' decision to dismiss Plaintiff from the Medical Program was, more likely than not, based on Plaintiff's handicap/disability; and, specifically, in Defendants' denial and/or refusal to accommodate Plaintiff's request for a reasonable accommodation and otherwise engage in an interactive dialogue with Plaintiff.

74. The above acts and practices of Defendants constitute unlawful discriminatory practices based on Plaintiff's handicap within the meaning of NJLAD.

75. Defendant James M. Hill engaged in the conduct alleged above while acting within the scope of his employment for Defendants.

76. Defendant James M. Hill individually aided, abetted, incited, compelled, and/or coerced the performance of the conduct alleged above within the meaning of the NJLAD.

77. The alleged acts and practices of Defendant James M. Hill constitute unlawful practices within the meaning of the NJLAD.

78. As a direct and proximate result of the above-conduct, Plaintiff has suffered and continues to suffer substantial loss of income; diminishment of career opportunity; loss of self-esteem; physical manifestations of pain and suffering; disruption of her family life; emotional distress and trauma; pain and suffering; and other irreparable harm.

**WHEREFORE**, Plaintiff, Iris Chin, prays for judgment against Defendants, jointly and severally, as follows:

A. For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B. For compensatory damages;

C. For punitive damages;

D. For attorneys' fees and costs of this action;

E. For interest at the maximum legal rate on all sums awarded;

F. For Consequential damages;

G. Readmission to the Medical Program; and

H. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 27, 2014

**LAW OFFICE OF ROBERT A. TANDY, LLC**

***s/ Robert A. Tandy***

Robert A. Tandy, Esq.
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake, New Jersey 07677
(201) 474-7103
(201) 474-7101 (facsimile)
rtandy@tandylaw.com
*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

Plaintiffs, by their attorneys certify that to the best of their knowledge, the matter in controversy is not related to any other action. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 27, 2014

**LAW OFFICE OF ROBERT A. TANDY, LLC**

***/s/ Robert A. Tandy***

Robert A. Tandy, Esq.
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake, New Jersey 07677
(201) 474-7103
(201) 474-7101 (facsimile)
rtandy@tandylaw.com
*Attorneys for Plaintiff*