NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRIS CHIN,<br><br>              Plaintiff,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY; RUTGERS NEW JERSEY MEDICAL SCHOOL; JAMES HILL, Ph. D.; ABC CORP., INC.; JOHN DOES; JANE DOES,<br><br>              Defendants. | Civil Action No.: 14-1332 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for summary judgment filed by Defendants Rutgers, the State University of New Jersey and Rutgers New Jersey Medical School ("NJMS" or the "School") and James M. Hill, Ph.D. ("Dr. Hill") (collectively, "Defendants"). (ECF No. 32). Plaintiff, a former medical student at NJMS, has opposed this motion (ECF No. 38), and Defendants have replied to same (ECF No. 39). The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court grants Defendants' motion for summary judgment in full.

## **BACKGROUND**

Plaintiff Iris Chin enrolled as a first-year medical student at NJMS in the beginning of the 2004-05 academic term.   (ECF No. 32-2, SOF ¶ 1).[1] It was during her first year in medical school that Plaintiff began suffering from severe depression accompanied by suicidal thoughts. (ECF No. 1, Compl. ¶ 12).  In 2008, while still enrolled at NJMS, Plaintiff was diagnosed with bipolar disorder.   (SOF ¶ 2).   Plaintiff's tenure at NJMS was not a particularly smooth one; although she achieved positive reviews from her clinical advisors and ultimately completed the first three years of the School's four-year program, she took several medical leaves of absences and had difficulty passing nationally required medical school examinations and matching with a residency program.  In 2012, the School dismissed Plaintiff on account of her failure to comply with its academic policies.

Plaintiff now alleges that the School failed to provide her reasonable accommodations on account of her disability in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the New Jersey Law Against Discrimination ("NJLAD").   The relevant facts are as follows.

**A.  NJMS's Academic and Promotion Policies**

At the time of her matriculation into the School, Plaintiff received a copy of NJMS's academic polices and was instructed by the School to review same.  (SOF ¶ 6).  As discussed in more detail below, included in NJMS's policies are requirements relating to the successful completion of the United States Medical Licensing Exam ("USMLE")—a three part examination for medical licensure in the United States—as well as a Promotion Policy which "gover[ns] the academic standing and promotion of NJMS students."  (*Id.* ¶¶ 7-17; ECF No. 32-3, Declaration of Dr. Hill, "Hill Decl.," ¶ 5, Ex. B at 1).

---

[1] ECF No. 32-3 is Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts ("SOF").  To the extent that Plaintiff's Responsive Statement (ECF No. 38-1) admits to those facts deemed undisputed in Defendant's SOF, the Court will cite only to "SOF" with corresponding paragraph numbers.

With regards to the USMLE, the School requires all medical students to "sit and record a score for USMLE Step 1 after the satisfactory completion of the second year and prior to starting third year." (*Id.* ¶ 8). The School also limits the amount of times a student may sit for the Step 1 examination. (*Id.* ¶ 9). A student who fails on her first attempt to pass the Step-1 exam "will be given one more opportunity to pass the examination," and this second attempt "must be made within six months of the date that NJMS receives notification of the failing score on the first attempt." (*Id.* ¶ 10). If a student fails to comply with the Step-1 Policy "and/or fail[s] to pass [the USMLE Step-1 exam] on the second attempt, [the student] will be dismissed from NJMS." (*Id.* ¶ 10).

The School maintains similar standards with respect to the two Step-2 exams, which all medical students are required to sit for after completing their third year requirements. (*Id.* ¶¶ 13-17). That is, NJMS students are permitted a maximum of two attempts to record a passing score for the Step-2 Clinical Skills ("CS") exam and the Step-2 Clinical Knowledge ("CK") exam (the "Step-2 Policy"). (*Id.* ¶ 14). Students who fail to comply with the Step-2 Policy are subject to dismissal from the School. (*Id.* ¶ 15).

In addition to adhering to the USMLE Policies, NJMS students are required to adhere to its Promotion Policy. (*Id.* ¶ 5; Hill Decl., Ex. B). Pursuant to that Policy, all medical students "are expected to enroll every semester after the first term of their degree program and must complete all requirements for graduation in six years or less, excluding leave(s) of absence . . ." (the "Six-Year Graduation Policy"). (*Id.* ¶ 18). Failure to comply with the Six-Year Graduation Policy is grounds for dismissal from the School. (*Id.* ¶ 19). Additionally, the School maintains a Three-Year Clinical Completion Policy, which provides that all medical students "must complete the clinical portion of their training, including passage of the . . . USMLE Step 2 CK and USMLE

3

Step 2 CS within three academic years, exclusive of approved leaves of absence . . . or the student will be dismissed." (*Id.* ¶ 22).

Notwithstanding the above graduation requirements, a student may make a written appeal of these policies to the Committee on Student Affairs ("CSA"). (Hill Decl., Ex. B, §VI.B.). A student may further appeal any decisions rendered by the CSA to the Dean of NJMS within ten (10) days after a decision is rendered by the CSA. (*Id.*).

### B. Plaintiff's Academic Performance

During her first year at NJMS, Plaintiff began suffering from severe depression with suicidal thoughts. (ECF No. 1, Complaint, "Compl." ¶ 12). When Plaintiff failed a number of classes her first year, the School permitted Plaintiff a four-month leave of absence ("LOA") from April to August 2005, as well as placement in the following year's incoming class. (*Id.* ¶ 24-25). Upon returning for another attempt at the first-year course load, Plaintiff again failed a first-year course and was permitted remediation by the School. (*Id.* ¶ 26). In addition to failing this course, in 2010, Plaintiff failed national exams at the end of two clinical rotations. (*Id.*). When Plaintiff failed these two clinical programs, Dr. Hill, the Associate Dean for Student Affairs (Hill Decl. ¶ 1) met with Plaintiff to discuss study strategies to ensure that Plaintiff would pass these exams on her next attempt. (SOF ¶ 27). [2]

After completing her first two years of medical school, Plaintiff was required to sit for the USMLE Step-1 exam. (*Id.* ¶ 33). On May 7, 2007 the Committee of Student Affairs ("CSA") granted Plaintiff a request for a six-week extension to sit for the USMLE Step-1 exam. (*Id.*). However, Plaintiff did not sit for the Step-1 exam at the expiration of her six-week extension. (*Id.* ¶ 34). Plaintiff testified that she did not sit for the exam because she "had difficulty

---

[2] Dr. Hill's Certification states that he "ha[s] been the Acting Associate Dean or Associate Dean for Student Affairs . . . at [NJMS] since 2009." (Hill Decl. ¶ 1). It is unclear whether Dr. Hill was acting in the capacity of Acting Associate Dean or Associate Dean when he met with Plaintiff in 2010 to discuss study strategies.

concentrating" and "difficulty studying at the time." (ECF No. 32-5, Declaration of William F. Maderer, Esq., Ex. B, Pl.'s Dep. Tr. 41:10-16). Thereafter, the CSA suggested that Plaintiff take a one-year medical LOA to give her sufficient time to prepare for the Step-1 exam. (SOF ¶ 34). When Plaintiff returned from her one-year LOA, she requested yet another extension of time to take the Step-1 exam—a request which the CSA denied. (*Id.* ¶¶ 36-37). Plaintiff appealed the CSA's denial of her extension request to Dr. Robert L. Johnson ("Dean Johnson"), the Dean of NJMS (ECF No. 32-4, Declaration of Dr. Johnson, "Johnson Decl." ¶ 1) who ultimately granted Plaintiff's request to delay taking the Step-1 exam. (*Id.* ¶ 38). After receiving the benefit of a year's LOA and a further extension of time to prepare for Step-1, Plaintiff sat for the exam but did not receive a passing score. (*Id.* ¶ 39).

Thereafter, the School permitted Plaintiff to take a four-month academic remediation LOA and required her to sit for the Step-1 exam for the second time by June 24, 2009. (*Id.* ¶ 40). On June 1, 2009, Plaintiff requested an extension of time to sit for the Step-1 exam, which the CSA denied. (*Id.* ¶ 41-42). Once again, however, Dean Johnson reversed the CSA's denial and permitted Plaintiff nearly two additional months to prepare for her second attempt at the Step-1 exam. (*Id.* ¶ 43). On August 23, 2009, Plaintiff sat for and failed the Step-1 exam for the second time. (*Id.* ¶ 44). Pursuant to the School's USMLE Step-1 Policy, discussed above, Plaintiff's failure to record a passing score upon her second attempt at the Step-1 exam constituted grounds for dismissal from the School. (*Id.* ¶ 45). Plaintiff, at the suggestion and with the assistance of Dr. Hill, appealed the School's Step-1 Policy and requested that she be given a third attempt at passing the Step-1 exam. (*Id.* ¶ 47). When the CSA initially denied Plaintiff's request to waive the Step-1 Policy, Dr. Hill helped Plaintiff appeal the CSA denial to Dean Johnson. (*Id.* ¶ 49). Ultimately, Dean Johnson granted Plaintiff's request to sit for the Step-1 exam for the third time.

(*Id.* ¶ 50).  Moreover, Dean. Johnson gave Plaintiff an additional eight weeks to prepare for the exam, and Dr. Hill helped secure a student tutor for Plaintiff's exam preparations.  (*Id.* ¶¶ 50-51). Plaintiff passed the Step-1 exam on her third attempt.  (*Id.* ¶ 52).

In January 2011, upon conducting a degree audit of all NJMS students, Dr. Hill and Ms. Julie F. Ferguson—the Assistant Dean for Student Affairs, Director of the Registrar's Office and Director of Clinical Electives—determined that, accounting for Plaintiff's LOAs, she was not on pace to complete her schooling in accordance with the School's Promotion Policy.  (ECF No. 39-2, Ferguson Decl. ¶¶ 8, 12).  Specifically, Dr. Hill and Ms. Ferguson determined that the Plaintiff was not on track to complete the clinical portion of her training and pass the USMLE Step-2 exams within three academic years of her promotion as a third-year student—as required by the School's Three-Year Clinical Completion Policy.  (*Id.*).  Dr. Hill and Ms. Ferguson also determined that Plaintiff was not on track to graduate within six academic years after her matriculation to NJMS in August 2004—as required by the School's Six-Year Graduation Policy. (*Id.*).

With the help of Ms. Ferguson, Plaintiff requested a waiver of the School's Six-Year Graduation Policy.  (*Id.* ¶ 14; SOF ¶ 54).  The CSA granted Plaintiff's waiver request, and extended Plaintiff's expected graduation date from February 2012 to May 2012, thereby "exceed[ing] the six year maximum completion timeframe for students in the [M.D.] program." (Hill Decl. ¶ 17; Hill Decl., Ex. N).  In its March 29, 2011 letter granting Plaintiff's request, the CSA advised Plaintiff that she "must satisfactorily complete the remainder of [her] academic requirements in the doctor of medicine degree program by a May 2012 graduation date in order to regain good SAP [satisfactory academic progress] standing."  (Hill Decl., Ex. N).

After the School granted Plaintiff's request to extend her anticipated graduation date, Plaintiff had difficulty passing the Step-2 CS and Step-2 CK exams.  In December 2011 and January 2012, respectively, Plaintiff learned that she had failed both exams on her initial attempt. (SOF ¶¶ 56, 62).  Plaintiff alleges that after she learned that she had failed both Step-2 exams, she asked Ms. Ferguson and Dr. Hill "if [she] could take Step-2 CS and Step-2 CK about a month after their deadlines because [she] needed more time to prepare and study."  (Pl. SOF ¶ 57; Pl.'s Dep. Tr. 102:22-103:25).  Plaintiff alleges that "Defendants rejected Plaintiff's request for a reasonable accommodation in postponing the second trial on the USMLE 2 Clinical Skill test." (Compl. ¶ 44).

On March 24, 2012, Plaintiff failed the Step-2 CS exam for the second time.  (SOF ¶ 57). Thereafter, she failed to meet an April 7, 2012 deadline that Dr. Hill had established for taking the Step-2 CK exam for the second time.  (*Id.* ¶ 63).  Plaintiff subsequently chose not to sit for the Step-2 CK exam on two rescheduled examination dates.  (*Id.* ¶¶ 63-64).

On April 25, 2012, the School advised Plaintiff of her non-compliance with the Step-2 Policy on account of her failure of the Step-2 CS exam on the second attempt and her failure to sit for the Step-2 CK exam by the April 24, 2012 reexamination deadline.  (*Id.* ¶ 69).  On May 3, 2012, Plaintiff submitted a formal waiver request to the CSA seeking (i) an extension of time to sit for her second attempt to pass the Step-2 CK exam, and (ii) an opportunity to sit for the Step-2 CS exam for a third time.  (*Id* ¶ 72).  In her request, Plaintiff attributed her failure of the CS exam and failure to sit for the CK exam by the established deadline to "academic, personal, and medical problems."  (Hill Decl., Ex. S).  Specifically, Plaintiff explained that she was suffering from "ongoing depression and anxiety."  (*Id.*).

On May 7, 2012, the CSA held a hearing regarding Plaintiff's requests, at which time Plaintiff was given the opportunity to address the Committee and answer members' questions. (*Id.* ¶¶ 73-74). The CSA denied Plaintiff's waiver requests. (*Id.* ¶ 77). Plaintiff thereafter appealed the CSA's determination to Dean Johnson. (*Id.* ¶¶ 78-80). In support of her appeal, Plaintiff submitted a letter that she wrote on her own behalf as well as a letter from her then-treating psychiatrist, Dr. Qi Hu, who advised that "Ms. Chin will be able to pass her Step II of USMLE Exams in two months if her Bipolar and Panic conditions become stable." (ECF No. 32 4, Declaration of Robert L, Johnson, M.D. ("Johnson Decl."), Ex. H; SOF ¶¶ 79-80). Plaintiff met with Dean Johnson and his Executive Assistant on May 31, 2012. (SOF ¶ 81). During this meeting, Plaintiff was given a final opportunity to explain why she should remain at the School. (*Id.*).

According to Dr. Hill and Dean Johnson, Dr. Hill contacted Dr. Hu in order to obtain more information that would aid in Dr. Johnson's appeal of the CSA's decision to dismiss Plaintiff from the School. (Johnson Decl. ¶ 20; Hill Decl. ¶ 56). Dr. Hill has certified that he: "contacted Dr. Hu, and he informed me that he had recently changed Plaintiff's medication at her insistence, even though it was not his initial recommendation. Dr. Hu, however, provided no specific information with respect to whether Plaintiff's psychiatric conditions would stabilize at any time under her current treatment plan." (Hill Decl. ¶ 56).

On June 20, 2012, Dean Johnson affirmed the CSA's decision to terminate Plaintiff from the School, effective immediately. (SOF ¶ 84).

### C.  Procedural History

Against this backdrop, Plaintiff filed a two-count Complaint against NJMS and Dr. Hill on February 27, 2014. The gravamen of Plaintiff's Complaint is that Defendants violated federal

and state anti-discrimination laws by: (1) denying her March 2012 requests to Dr. Hill and Ms. Ferguson for an extension of time retake the Step-2 exams and (2) denying her formal written request to sit for the Step-2 CS exam for a third time and for an extension of time to sit for her second attempt to pass the Step-2 CK exam.   (Compl. ¶¶ 43-50).   Thus, Plaintiff alleges that Defendants denied her reasonable accommodations in violation of Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12131-12134, Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 (Count I) and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.*, (Count II).

On February 24, 2016, Defendants filed the instant motion for summary judgment, seeking dismissal of each of Plaintiff's claims.   (ECF No. 32, "Defs.' Mov. Br.").   Plaintiff filed opposing papers on April 18, 2016 (ECF No. 39, "Pl.'s Opp. Br.") and Defendant filed a reply to same on April 25, 2016 (ECF No. 39, "Defs.' Reply Br.").   This motion is now ripe for the Court's adjudication.

## LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial."   *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231,

236 (3d Cir. 1995). Moreover, "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001) (quoting entirely *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43, 249 ("At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## ANALYSIS

The parties dispute whether Plaintiff can prove her claim of disability discrimination under the ADA, RA and NJLAD. Both the ADA and RA bar an entity that receives federal funding, such as NJMS, from discriminating against an individual on account of that individual's disability. *See McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995). Similarly, the NJLAD prohibits "any place of public accommodation" from refusing to any individual, on account of, *inter alia*, that individual's disability, the right "to obtain all the accommodations, advantages, facilities and privileges" of that public entity. N.J.S.A. § 10:5-4. The standards for determining a violation of the RA and NJLAD are the same as those under the ADA. *See Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001); *see also Ensslin v. Twsp of North Bergen*, 275 N.J. Super. 352, 364 (N.J. Super. Ct. App. Div. 1994) (applying federal case law interpreting the RA to NJLAD claims of handicap discrimination and noting that the New Jersey "Supreme Court has suggested a correlation between State and federal law on handicap discrimination").

Accordingly, the Court "confine[s] [its] discussion to the ADA with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims." *Chisolm*, 275 F.3d at 324, n.9; *see also Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Edu.,* 587 F.3d 176, 189 (3d Cir. 2009).

To state a claim for disability discrimination under the ADA, "[p]laintiffs must show that: (1) they are handicapped or disabled as defined under the statutes; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (citing *Chambers ex rel. Chambers*, 587 F.3d at 189).

For purposes of this motion, Defendants do not dispute that Plaintiff suffers from a disability which qualifies her for protection under these statutes. (Defs.' Mov. Br. at 10, n. 2). Defendants do maintain, however, that Plaintiff cannot meet the second element of her ADA claim—that is, that Plaintiff cannot show that she was "otherwise qualified" for the School's medical program. (*Id.* at 13-16).[3]

"An otherwise qualified individual is a person who can meet all of a program's requirements in spite of a disability, with or without reasonable accommodation." *Millington v. Temple Univ. Sch. of Dentistry*, 261 Fed. App'x. 363, 366 (3d Cir. Jan. 23, 2008) (unpublished) (citing *Southeastern Comm. Coll. v. Davis*, 442 U.S. 397, 406 (1979) and *McDonald v. Pennsylvania*, 62 F.3d 92, 96 (3d Cir. 1995)). It is the plaintiff who must offer evidence that a reasonable accommodation existed that would permit her to meet the program's requirements. *Id.* If a plaintiff makes this showing, then a defendant bears the burden of showing that plaintiff's "requested accommodation would fundamentally alter the nature of the school's

---

[3] Defendants also argue that Plaintiff has now shown that she was discriminated against based on her disability. (Defs.' Mov. Br. at 20-27). However, because the Court finds that Plaintiff cannot meet the "otherwise qualified" prong of her claims, the Court need not address this final element of Plaintiff's discrimination claims.

11

program." *Id.* at 357 (citing *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1048 (9th Cir. 1999).

In summary, Plaintiff argues that had she been granted her requested accommodations with respect to re-taking the Step-2 exams, she would have been successful in passing those exams and graduating from NJMS. Thus, Plaintiff alleges that Defendants unlawfully denied: (1) her March 2012 request to Ms. Ferguson and Dr. Hill for a one-month extension of time to retake both Step-2 exams and (2) her May 2012 requests for an accommodation to take the Step-2 CS exam for a third time and for an extension of time to take the Step-2 CK exam for a second time. (Compl. ¶¶ 43, 50; SOF ¶ 72).

Plaintiff maintains that she is "otherwise qualified" to complete the School's program. (Pl.'s Opp. Br. at 5-10). First, Plaintiff notes that prior to her failures of the Step-2 exams she was able to meet the School's requirements. (*Id.* at 5-7). Specifically, Plaintiff cites to Defendants' November 2011 performance evaluation wherein the School acknowledged several glowing reviews by her clinical advisors and recommended Plaintiff for a residency position. (*Id.*). Second, Plaintiff states that unlike NJMS's policy permitting students only two attempts at taking the Step-2 exams, the National Board of Medical Examiners ("NMBE") USMLE policy permits a plaintiff up to six attempts. (*Id.* at 8-9). It appears to the Court that by referencing the NBME Policy, Plaintiff is suggesting that her inability to comply with the School's Step-2 Policy does not make her unfit for medical school generally. Along the same lines, Plaintiff notes that after her dismissal from NJMS, she enrolled in American International Medical University, and in August 2014 (over two years after Plaintiff was dismissed from NJMS) she passed the Step-2 CK examination, "further demonstrating Plaintiff would have been able to satisfy the academic standards of Defendant's Medical Program had Defendant accommodated her." (*Id.* at 9).

Finally, Plaintiff notes that she was able to pass the Step-1 examination on her third attempt when Defendant granted the same accommodations that she requested for the Step-2 exams. (*Id.*).

Defendant argues, and the Court agrees, that Plaintiff has not shown how her requested waivers would have enabled her to pass the Step-2 exams. (Defs.' Mov. Br. at 14). Plaintiff attributes great importance to her academic successes prior to and up to two years after she was required to record a passing score for the Step-2 exams. However, Plaintiff must show that she was capable of completing the School's requirements with reasonable accommodations at the time that she requested those accommodations rather than several years prior to or after she made these recommendations. Thus, the fact that: (1) Plaintiff completed the first half of the School's four-year curriculum; (2) that she passed the Step-1 exam on her third attempt, and; (3) that Plaintiff passed one (out of two)[4] of the Step-2 exams two years after she was dismissed from NJMS, are of no consequence to whether, in 2012, and despite her disabilities, Plaintiff was qualified to graduate from NJMS. Additionally, the fact that other schools, pursuant to the NMBE Policies, may permit their students to take the Step-2 exam up to six times says nothing of Plaintiff's ability to meet the specific academic requirements that NJMS imposes on its students. The ADA does not impose any "requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a [protected individual]." *Southeastern Comm. College v. Davis*, 442 U.S. 397, 413 (1979).

In support of her appeal of the CSA's decision to terminate Plaintiff from the program, Plaintiff submitted appeal letters on her own behalf, as well as a letter from her treating

---

[4] On February 11, 2016, the Court granted Defendants' request for an adjournment of the deadline to file a motion for summary judgment "in order to allow Plaintiff's counsel additional time to provide Defendants with the results of Plaintiff's most recent USMLE Step-2 CS exam," which she was scheduled to sit for in January 2016. (ECF No. 31). To date, Plaintiff has failed to present any evidence that she has passed (or even sat for) the January 2016 scheduled exam.

psychiatrist, Dr. Hu.  However, Plaintiff's May 8 and May 31, 2012 letters to Dean Johnson did not engender any confidence that Plaintiff could pass the Step-2 exams if her accommodations were granted.  Plaintiff's letters attributed her failures (in part) to a flare up of her depression, anxiety and panic attacks.  (Johnson Decl., Ex. F).  In addition to promising to work with tutors and improve her study habits, Plaintiff promised to "see [her] psychiatrist every week and comply with all his medication and tell him of any changes or side effect immediately."  (*Id.*).  However, as Defendants note, Plaintiff failed to explain how granting her requested accommodations would ensure her passage of the Step-2 examinations.  (Defs.' Mov. Br. at 14).  Specifically, after reviewing Plaintiff's academic record and her letters of appeal, Dean Johnson determined that "any extra study time [he] may have afforded [Plaintiff] would not have had any impact on her ability to take or pass the Step-2 exams." (Johnson Decl. ¶ 19).

Moreover, the record shows that Dr. Hill and Dean Johnson actively sought additional information that would assist in determining whether Plaintiffs' requests to retake the Step-2 examinations could yield passing results.  (Hill Decl. ¶ 56; Johnson Decl. ¶ 20).  Upon reviewing Dr. Hu's brief letter, which stated that Plaintiff "will be able to pass her Step II of USMLE Exams in two months if her Bipolar and Panic conditions become stable"  (Johnson Decl., Ex. H), Dr. Hill contacted Dr. Hu for more information.  (Hill Decl. ¶ 56).   Dr. Hu "informed [Dr. Hill] that he had recently changed Plaintiff's medication at her insistence, even though it was not his initial recommendation.  Dr. Hu, however, provided no specific information with respect to whether Plaintiff's psychiatric conditions would stabilize at any time under her current treatment plan." (Hill Decl. ¶ 56).

Even assuming Plaintiff was able to demonstrate that she would be capable of passing the Step-2 exams with her requested accommodations, Defendants have offered sufficient evidence

to show that the requested accommodations would have "fundamentally alter[ed] the nature of the [School's] program." 28 C.F.R. § 35.130(b)(7); *see also Millington*, 261 Fed. App'x. at 366. That is, Defendants have shown that granting Plaintiff's accommodations would result in the "substantial weakening [of NJMS's] academic standards." (Defs.' Mov. Br. at 16). Specifically, were Defendants to grant Plaintiff's requests to waive the Step-2 Policy by allowing Plaintiff to retake these examinations, Defendants would also be waiving the School's Six-Year Graduation Policy and Three-Year Clinical Completion policies. (*Id.* at 8). According to Defendants, not only would the waiver of all three policies for one student be unprecedented (*Id.* at 17-20), but such a waiver would "fundamentally alter the M.D. program by ignoring Plaintiff's demonstrated failure to pass nationally-required examinations by established deadlines—standards and requirements that the School is charged with upholding for all NJMS students." (Hill Decl. ¶ 61). The School further notes that "Plaintiff's request to waive these policies would have completely eviscerated the academic standards otherwise applicable to all NJMS medical students, as her repeated failures demonstrated her inability to master the basic medical science necessary to become a competent physician." (Hill Decl. ¶ 61).

Plaintiff argues that a grant of her accommodations would not have fundamentally altered the School's academic program. (Pl.'s Opp. Br. at 10-15). First, Plaintiff takes the position that her March 2012 request for an extension of time to retake the Step-2 exams would not have required the School to waive its Six-Year Graduation Policy. (*Id.* at 10-12). Applying principles of contract interpretation to the School's Promotion Policy, Plaintiff argues that students have six calendar years—rather than six academic years—to complete the program. (*Id.*). Therefore, Plaintiff contends that if the School granted her March 2012 verbal request for an extension of

time to retake the Step-2 exams, she would have been able to record a passing score prior to the expiration of six-calendar years from her August 2004 enrollment. (*Id.* at 12).

The Court declines to apply principles of contract interpretation to the NJMS graduation requirements. It is not the role of this Court to interpret the School's Promotion Policy. Accordingly, the Court will defer to the School's representations that the Six-Year Graduation Policy "requires all NJMS students to graduate within six academic years—not six calendar years—of their matriculation." (Ferguson Decl. ¶ 7).

Plaintiff further argues that a waiver of the Six-Year graduation policy would not lessen the School's academic standards since there is no federal requirement that a student must graduate within six years of matriculation. (Pl.'s Opp. Br. at 12-13). However, the absence of such a requirement by the Department of Regulations is inapposite to the question of whether a waiver of the School's policies would fundamentally change the nature of that specific School's program. As such, the court is not moved by Plaintiff's reference to Federal regulations that set forth the fundamental requirements that all post-graduate schools must maintain.

Finally, Plaintiff's argument that other students have been granted a waiver of the Step-2 Policy is unavailing in light of Defendants' representations, and Plaintiff's failure to offer examples to the contrary, that no student has ever been granted a waiver of all three policies implicated by Plaintiff's requests. (Pl.'s Opp. Br. at 14-15; Defs.' Reply Br. at 10; Hill Decl. ¶¶ 60-61).

In summary, the record demonstrates that the School took great efforts to accommodate Plaintiff throughout her academic career and was in fact proactive in helping to facilitate Plaintiff's academic success. (*See* Background Section, *infra*). Plaintiff has testified that she met with Dr. Hill "dozens" of times during her tenure at the School, that he made himself

available to meet with Plaintiff to discuss her academic difficulties, and that he guided and advised Plaintiff along the way, and that he assisted in her appeal of several of the School's decisions. (Pl.'s Dep. Tr. 68:20-70:14). Before terminating Plaintiff from NJMS, the CSA reviewed Plaintiff's waiver request and her academic record, and also gave Plaintiff the opportunity to present arguments as to why she should be permitted to remain at the School. (Hill Decl. ¶ 52). Similarly, when reviewing Plaintiff's appeal from the CSA's termination decision, Dean Johnson had an in-person meeting with Plaintiff to permit her further opportunity to present evidence that her requested accommodations would enable her to pass the Step-2 examinations. (Johnson Decl. ¶ 13). Dean Johnson also directed Dr. Hill to reach out to Plaintiff's psychiatrist for any more information with regards to the effect that treatment may have on Plaintiff's ability to pass her exams. (SOF ¶ 83; Johnson Decl. ¶¶ 12-21). Ultimately, Dean Johnson determined that Plaintiff was not qualified to complete the School's program and that granting Plaintiff's requested accommodations would pose a threat to the integrity of the medical program. (Defs.' Mov. Br. at 18-20; Johnson Decl. ¶ 21).

"When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). Accordingly, the Court will defer to the School's academic judgment that Plaintiff's failure to comply with its policies necessitated her dismissal, and will grant Defendants' motion for summary judgment. *Id.*; *see also McMahon v. Rutgers*, Civ. No. 11-2306, 2013 WL 5937416, *9 (D.N.J. Nov. 4, 2013) (dismissing plaintiff's substantive due process claim against a university where plaintiff had not shown that the University's "decision to dismiss him because of his grades was 'beyond the pale of reasoned academic decision-making'") (internal citation omitted)).

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is hereby granted in full.[5]  An appropriate Order accompanies this Opinion.


IT IS SO ORDERED.

DATED: May 9th, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court finds that Plaintiff has failed to state a claim for disability discrimination, the Court necessarily finds that Plaintiff's claim against Dr. Hill for aiding and abetting in violation of the NJLAD must fail, as an individual cannot be liable for aiding and abetting an NJLAD violation in the absence of wrongful conduct by a "principal violator."  *See Tarr v. Ciasulli*, 181 N.J. 70, 84-85 (2004).